# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 5, 2014

## STATE OF TENNESSEE v. LONA PARKER

**Appeal from the Criminal Court for Shelby County**
No. 12-02646     W. Mark Ward, Judge

**No. W2013-02446-CCA-R3-CD  - Filed August 20, 2014**

Appellant, Lona Parker, was indicted for and convicted of theft of property valued at more than $1,000 but less than $10,000, a Class D felony.  The trial court sentenced him to twelve years in the Tennessee Department of Correction as a career offender.  He now appeals, challenging the sufficiency of the convicting evidence.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Stephen C. Bush, District Public Defender; and Tony N. Brayton (on appeal) and Jim Hale (at trial), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Lona Parker.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Amy P. Weirich, District Attorney General; and Susan Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts

Appellant was indicted for theft of property, a Toyota Camry automobile, valued at more than $1,000 but less than $10,000, in violation of Tennessee Code Annotated section 39-14-103.

The State's first witness was the victim, Annette Demmitt, who testified that in May 2011, she owned a 1988 Toyota Camry. She had saved her money to pay $1,200 cash for the vehicle approximately three months earlier. In addition, she invested approximately $300 in repairs to the vehicle after purchasing it. On May 11, 2011, the victim drove her daughter to school and then went to church. As she was sitting in the church service, she received a telephone call and left the church to answer the call. When she did, she noticed that her vehicle was not where she had parked it. At the time, her daughter's laptop computer was in the vehicle, as well as various articles of clothing and her daughter's "Jordan" shoes. The victim's daughter had left her "Razor" cellular telephone in the vehicle, and the victim had left her purse in it, which contained all of her information, insurance cards, medications, and her daughter's medications. The victim was not insured against theft, and she never recovered any of the stolen property. The police drove the victim to pick up her daughter from school and then drove them home.

After the victim's vehicle was stolen, she had to walk, utilize public transportation, or give gas money to people in exchange for transportation. At the time of trial, she had not been able to purchase a replacement vehicle. She did not work but instead spent her time caring for her daughter, who was hospitalized at the time of trial. She learned that police eventually found her vehicle but that a man had sold it and it had been crushed.

On cross-examination, the victim clarified that she had been making payments on the vehicle to the man from whom she purchased it.

The State then called James Kincade who was employed by Worley Brothers' Iron and Metal as the Safety Director. He explained the procedure by which an individual could bring in a vehicle and sell it to the company. After checking for obvious signs of theft and verifying the identification of the seller, the company would pay the seller. Mr. Kincade testified that state law permitted them to purchase a vehicle without keys as long as there were no obvious signs of theft or foul play and without a title if the vehicle was more than twelve years old. The company did not have access to a database to confirm that a vehicle had not been reported stolen. Mr. Kincade said that they were required by law to photocopy the individual's identification and obtain a signature and a thumbprint.

Mr. Kincade stated that on May 12, 2011, one of the employees conducted a transaction with appellant. She obtained appellant's identification and his address. She recorded the weight of the "commodity," which was a vehicle, and she noted the amount of money the company paid appellant. On a second ticket, she wrote a description of the vehicle appellant was driving, including the tag number and the VIN number. On a third ticket, she recorded a description of the vehicle, which was a brown 1988 Toyota Camry. Because of the age of the vehicle, the company was not required to obtain a valid title. The

vehicle did not display any obvious signs of theft, so they purchased the vehicle. Mr. Kincade noted that the vehicle was towed in by a red and black GMC truck. He identified the tickets that recorded the transaction and testified that appellant was the person who brought in the Toyota Camry. Mr. Kincade recited appellant's driver's license number.

Mr. Kincade testified that in further compliance with their standard operating procedure, at the end of each business day they recorded the VINs of the vehicles they purchased and e-mailed the list to the sheriff's department to check for stolen vehicles. He confirmed that they received a reply indicating that the Toyota Camry had been reported stolen. Mr. Kincade did not know whether the vehicle was ever returned to the victim.

On cross-examination, Mr. Kincade elaborated that in addition to examining the vehicles for signs of theft, they took additional precautions and attempted to gauge the veracity of the person who brought in the vehicle. For instance, he noted whether the customer made eye contact with him. They checked the "story" and then checked it again a few minutes later to be certain that they were consistent. Mr. Kincade looked at "[b]ody language [and] overall composure." He also noted that they were required to preserve a vehicle for at least three days prior to destruction. His file did not note when law enforcement responded to his e-mail of May 12 or when the victim's vehicle was destroyed. He said that their procedure had changed between 2011 and the time of trial; in 2011, they

sometimes "stacked" the vehicles during the waiting period, but they later changed the procedure by setting them aside during the waiting period to prevent damage.

Detective Charles Tarwater with the Shelby County Sheriff's Office testified next and said that he investigated the May 2011 theft of the victim's Toyota Camry. As a matter of course, he investigated automobile theft through scrap yards. He advised the scrap yards to send him a list of VINs that they processed each day. Detective Tarwater would enter the numbers into a national database to see if they were stolen. If he received a match, he confirmed the match with the scrap yard then obtained the seller's information from it. He would then verify the thumbprint and search the driver's license database.

Detective Tarwater noted that on May 12, 2011, the second vehicle that Worley Brothers' Iron and Metal purchased had been reported stolen. When he visited the company, he observed that the vehicle was in a "stack" of vehicles that were on top of each other. He positively identified the victim's vehicle and obtained a copy of appellant's sales receipt. All of the seller's identifying information – his thumbprint and his state-issued identification card number – matched appellant.

On cross-examination, Detective Tarwater explained that by "stacked," he meant that another vehicle was sitting on top of the victim's and that the roof had caved in. He

confirmed that "it does happen" that a vehicle would change hands several times after it had been stolen. He did not know if someone had driven to Worley Brothers' with appellant. Detective Tarwater acknowledged that he did not know whether appellant had stolen the car but stated that he had considered appellant's "mere possession" of it. He said that he originally valued the vehicle at $700.

On redirect examination, Detective Tarwater testified that the Kelley Blue Book value of the vehicle was over $1,000.

The State's last witness was Debra Finley, a fingerprint technician with the Shelby County Sheriff's Department. She was accepted by the court as an expert in latent fingerprint examination. Ms. Finley testified that another examiner matched the thumbprint on the Worley Brothers' application with the thumbprint in appellant's Records and Identification file at the sheriff's department. Ms. Finley then confirmed the identification through an independent analysis. She positively matched both prints as appellant's thumbprint.

Upon this evidence, the State rested its case, and appellant rested without presenting proof. After deliberations, the jury found appellant guilty as charged. The trial court sentenced him to as a career offender to twelve years in the Tennessee Department of Correction. Appellant now challenges the sufficiency of the convicting evidence.

II. Analysis

The sole issue for our consideration is whether the evidence presented by the State was sufficient to sustain appellant's conviction of theft of property valued at more than $1,000 but less than $10,000.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn

therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As indicted in this case, "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. In this case, the State indicted appellant for theft of property valued at more than $1,000 but less than

$10,000, a Class D felony. Therefore, the State must have also proven the value of the victim's property beyond a reasonable doubt.

The evidence adduced at trial establish that appellant appeared at Worley Brothers' Iron and Metal with the victim's vehicle in tow. The victim had given no one permission to use her vehicle. Appellant wrongfully asserted ownership thereof and proceeded to sell the vehicle. He did not have a title or keys to the vehicle. He knowingly exercised control over property that did not belong to him, and he did not have the owner's effective consent. The State also presented evidence with regard to the value of the vehicle. The evidence was sufficient to establish appellant's guilt of this charge.

Appellant contends that because no proof was presented that he actually stole the victim's vehicle, his conviction cannot stand. The State points out that to prove the offense of theft, the evidence does not need to establish that appellant actually stole the vehicle; it is sufficient that he exercised control over it without the owner's consent. Assuming *arguendo* that appellant did not steal the victim's vehicle, the uncontroverted evidence proved that appellant sold the vehicle as scrap metal and that he tendered the vehicle without an accompanying title or keys. The jury, on this evidence, could have found beyond a reasonable doubt that appellant exercised control over the victim's property without the victim's effective consent.

Appellant further asserts that the State failed to present proof of value, claiming that Detective Tarwater "conveniently" remembered the Kelley Blue Book value of more than $1,000 when testifying on redirect examination. As applicable in this case, Tennessee Code Annotated section 39-11-106(a)(36) defines value as "the fair market value of the property . . . at the time and place of the offense." An owner may testify as to the value of his or her personal value. *See State v. Rickman*, 631 S.W.2d 448, 450 (Tenn. Crim. App. 1981). The victim testified that she paid $1,200 for the vehicle and invested another $300 in it for various repairs. Although Detective Tarwater originally valued the vehicle at $700, upon further investigation he learned that the Kelley Blue Book value was over $1,000.

Appellant argues that because the scrap metal company paid him $254 for the vehicle, that figure should affect valuation of the property. We find this argument unpersuasive. The jury had before it evidence of the Worley Brothers' valuation of the vehicle, the victim's estimated value of it, and the Kelley Blue Book's valuation of it, as reported by Detective Tarwater. In its role as trier of fact, the jury accredited either the victim, the detective, or both, and found appellant guilty of theft of property valued at more than $1,000 but less than $10,000. We will not disturb the jury's factual finding in this regard.

**CONCLUSION**

For the foregoing reasons, upon our review of the record as a whole, the briefs of the parties, and the applicable case law, we affirm the judgments of the trial court.

_____

ROGER A. PAGE, JUDGE